## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENDALL RAYE ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C. A. No. 05-721-KAJ |
| | ) |
| STATE OF DELAWARE, | ) |
| DEPARTMENT OF PUBLIC SAFETY/ | ) |
| DMV, | ) |
| | ) |
| Defendant, | ) |

**DEFENDANT'S OPENING BRIEF**

**SUPPORTING THE MOTION FOR SUMMARY JUDGMENT**

State of Delaware<br>
Department of Justice<br><br>
Frederick H. Schranck (ID #925)<br>
Deputy Attorney General<br>
P.O. Box 778<br>
Dover, DE  19903<br>
(302) 760-2020<br>
Attorney for Defendant<br>
State of Delaware

DATE:    September 27, 2006

**TABLE OF CONTENTS**

TABLE OF CITATIONS ............................................................................................... iii

NATURE AND STAGE OF THE PROCEEDING .................................................... 1

SUMMARY OF ARGUMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 1

ARGUMENT ................................................................................................................ 9

SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE STATE AND AGAINST PLAINTIFF, WHERE THE UNDISPUTED MATERIAL FACTS SHOW THAT THERE WAS NO RACE-BASED RETALIATION AGAINST PLAINTIFF WITH RESPECT TO A JOB-RELATED TRANSFER TO MEET OPERATIONAL NEEDS AND ACCOMMODATE PLAINTIFF'S MEDICAL LIMITATIONS. ............................................................................................................ 9

    STANDARD OF REVIEW ON SUMMARY JUDGMENT ............................ 9

    MERITS OF THE ARGUMENT ................................................................... 10

CONCLUSION ........................................................................................................... 15

# TABLE OF CITATIONS

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 9

*Boyd v. Wilmington Police Department*, 439 F. Supp. 2d, 343 (D.Del. 2006) ...... 9

*Burlington N. & Santa Fe Ry. Co. v. White*, --- U.S. ---, 126 S.Ct. 2405 (2006) ... 12

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir.1994) ...................................................... 14

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976) ........................... 9

*Jensen v. Potter*, 435 F.3d 444 (3d Cir.2006) ....................................................... 13

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494 (3d Cir.1997) ..................................... 14

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...... 9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 *(1973)* .................................... 14

*Moore v. City of Philadelphia*, --- F.3d ---, 2006 WL 2492256 (C.A. 3) .... 10, 12-15

*Nelson v. Upsala Coll.*, 51 F.3d 383 (3d Cir. 1995) .......................................... 10, 12

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ......................... 9

*Rogers v. State of Delaware*, C.A. No. 03-476-KAJ .................................................2

## STATUTES

42 U.S.C. § 2000e-3(a) ...................................................................................... 1, 10

## RULES

Fed. R. Civ. P. 56(c) ....................................................................................................9

## OTHER AUTHORITIES

Delaware State Employees Merit Rule 1.4 ............................................................. 4

Delaware State Employees Merit Rule 10.6 .......................................................... 4

## NATURE AND STAGE OF THE PROCEEDING

Kendall Raye Rogers ("Rogers" or "Plaintiff") filed this *pro se* litigation in October 2005, alleging a retaliatory job transfer in violation of 42 U.S.C. § 2000e-3(a), by the Division of Motor Vehicles ("DMV")[1] in February 2003. Complaint, D.I. #1. The State timely filed an Answer to the Complaint, D.I. #3, and discovery took place between the parties, as contemplated by the Court's scheduling order. (D.I. #10).

The State is filing its case-dispositive Motion for Summary Judgment contemporaneously with this Opening Brief in support of its position.

## SUMMARY OF ARGUMENT

1. Should the State be granted summary judgment in this case, where there are no material facts in dispute challenging the State's position that it transferred Plaintiff to a temporary assignment at another DMV office for reasons unrelated to retaliatory motives or his race?

## STATEMENT OF FACTS

The State relies upon the answers to the Interrogatories that it filed in this case, D.I. #25, as well as the supporting documentation for those answers that it previously supplied to Plaintiff. Much of this Statement is drawn directly from those answers.

There are some additional facts to be kept in mind.

---

[1] During a portion of the relevant time frame, the DMV was part of the State of Delaware's Department of Public Safety. It is now part of the Delaware Department of Transportation. The Defendant respectfully suggests that the caption of the case be simplified to name the State of Delaware as the Defendant, and uses that reference throughout this Brief.

1

Rogers is employed at DMV as a Motor Vehicle Technician II. For several years he worked at the Dover DMV motor vehicle inspection facilities (sometimes called "lanes"). He had non-work-related medical problems, however, including knee surgery in 2002, which eventually led to an employment dispute about a light duty assignment in the DMV's Driver's License section. This disagreement eventually resulted in civil litigation, in a case captioned *Rogers v. State of Delaware*, C.A. No. 03-476-KAJ.

That lawsuit was eventually resolved by a settlement, dated June 4, 2004. A copy of this settlement agreement and release is included in the Appendix accompanying this Brief as Exhibit 1. It credited Rogers with 7 ½ sick days; affirmed that there would be no retaliation against him for filing the suit; and affirmed that the DMV would permit him to remain in an assignment in the Driver's License section, instead of his previous assignment in the Inspection Lanes. The DMV gained a dismissal of the suit, without any admission of liability.

*During the course of that litigation*, however, the DMV had to deal not only with Rogers' medical limitations and desire for work that would fit those limitations--it also had to deal with its own operational needs.

Those facts were addressed in large part in the DMV's Answers to the Interrogatories Plaintiff served on it in this litigation, which included the following questions and answers, repeated here below:

    1.    Why did you send me to New Castle, when an agreement had been made stating there would be no retaliation?

ANSWER:  Mr. Rogers was temporarily transferred to the Dover Driver License Section due to knee surgery that temporarily prevented him from

performing the duties he was hired to perform in the Dover Inspection Lane.  At no time was he informed that this was a permanent transfer due to the fact that the Dover Driver License Section was fully staffed and had no vacant positions.  When Mr. Rogers presented the Division with a doctor's note stating he could no longer perform his job at the Dover Inspection Lane, a decision had to be made concerning Mr. Rogers' employment.  A statewide hiring freeze was in affect for all State employees; therefore, the Division could not replace employees who left employment with the Division.  Mr. Rogers was transferred to the New Castle Office because the Dover Office was fully staffed and New Castle had two vacancies due to the retirement/death of New Castle Office employees.  These positions could not be filled due to the hiring freeze, and as a result, customer waiting times for driver services at the New Castle Office were extremely long resulting in numerous complaints from Delaware citizens.  Mr. Rogers was being temporarily accommodated with a position in the Driver License Section due to his knee surgery.  Mr. Rogers was an addition to an already fully staffed office.  Retaliation had nothing to do with the transfer.  In fact, the agreement to which Mr. Rogers is referring was not even signed until June 4, 2004 (see attached agreement [in the Appendix]).  This [was] well after Mr. Rogers had been transferred to New Castle and [was] after he had been transferred back to Dover when a vacant position became available.  The agreement was the result of an EEO complaint Mr. Rogers made against the Department of

3

Public Safety Human Relations concerning his return to work following his knee surgery.

2. Why was I sent to New Castle although there were more experienced techs with less seniority than me in the same position?

ANSWER: As stated in the answer to question 1, Mr. Rogers was "extra" staff in the Dover Office; moved from the Inspection Lane to Driver License temporarily to accommodate his disability. Therefore, he had no "seniority" in the Driver License Section. The Division did not have a position in the Dover Driver License Section, and, therefore, could not permanently move him into that section without action from State Personnel to create another position. A hiring freeze was in [e]ffect at that time; therefore, the Division could not even attempt to create another position. Mr. Rogers also had to be trained for the duties in Driver License Section and could be trained as well at either office.

3. The State of Delaware Merit system used seniority as a rule for job situations. Why wasn't it used in my transfer to New Castle?

ANSWER: Merit Rule 10.6 regarding Transfer does not address seniority. The Merit Rules state: "To promote the efficiency of the service, unrelated to employee performance, employees may be transferred to another position for which they meet minimum qualifications in the same pay grade within the same agency without competition." In addition, Merit Rule 1.4 states: "The State has the exclusive right to manage its operations

4

and direct employees except as specifically modified by these rules."[2] The Division has always managed operations by moving employees from one location to another to meet operational needs. This becomes critical due to hiring freezes or hiring slowdowns when one lane [note omitted] may be impacted more than other lanes due to retirements or other loss of employees. The Division has temporarily or permanently moved managers, supervisors, and staff employees to other locations to meet the needs of the facility and our customers. As stated in the answer to Question 2, Mr. Rogers did not have "seniority" nor was he permanently assigned in the Driver License Section.

4.   When I returned to Dover why wasn't another technician sent to New Castle since you and your staff said someone had to be sent to New Castle?

ANSWER: On or about February 10, 2003, Michael O. McCann, Chief of Administration at DMV, met with Mr. Rogers to discuss his transfer to New Castle County. During that conversation, Mr. McCann promised Mr. Rogers that he would be returned to Dover as soon as the hiring freeze was lifted, a vacant position was available at Dover and new staff could be hired for New Castle. The freeze was lifted on December 16, 2003, and Mr. Rogers returned to Dover in March of 2004. There was no need to send someone else up from Dover as new staff had been hired.

5.   What was your intent when you agreed that there would be no retaliation?

---

[2] For the Court's convenience, the full text of these Rules appears in the Appendix as Exhibit 2.

5

ANSWER: The agreement Mr. Rogers signed on June 4, 2004, concerning retaliation was well after he had been transferred to New Castle and returned to Dover. Mr. Rogers' transfer to New Castle was done to meet the operational needs of the Division and to move him from an overstaffed section to a section in desperate need of employees.

6.  What date and time was it that your staff asked the co-workers in the department if anyone would volunteer to transfer to New Castle permanently?

ANSWER: On or about January 23, 2003, Art Ericson directed Martin "Bucky" Stapleton to request a volunteer from the Dover Motor Vehicle Techs to work in New Castle due to the backlog of road tests in that office. The request was made verbally to five employees, all of whom declined. Mr. Stapleton reported this to Mr. Ericson on or about January 27, 2003. The Division tries to find volunteers when at all possible when moving employees from one location to another. This is not always possible depending on the needs of the section and the qualifications of the employees.

7.  Why did you decide to return me to Dover when the transfer was suppose [sic] to be permanent?

ANSWER: Mr. Rogers' transfer was only "permanent" for the duration of the hiring freeze. He was promised a return to the Dover Office at the end of the hiring freeze, and was brought back to Dover as soon as possible after the freeze was lifted and a vacant position was available at Dover.

In addition, the relevant DMV documents supporting its understanding of the facts, and made available to Rogers during discovery, include the following:

- An email from Doug Beyer, a DelDOT personnel officer, dated February 22, 2006, indicates that there were two hiring freezes involving DMV employees: March 19, 2002 to July 1, 2002, and September 18, 2002 through December 16, 2003; Appendix to Opening Brief, Exhibit 3.

- Emails within DMV management in early 2003 show discussion about assigning Rogers to Drivers' License work at one of its New Castle County facilities. As noted in one of the emails, Rogers quickly *claimed* that the transfer was in retaliation for his lawsuit, but the emails also show that there was a need for *someone* to work at the New Castle County lanes. These factors included a disparity in workload between the Dover and New Castle facilities (Eanes email dated January 29, 2003; Appendix to Opening Brief, Exhibit 4); and backlogs and other service issues at New Castle compared to Dover for Class D road tests and Commercial Driver License matters (Eanes email dated January 30, 2003; Appendix to Opening Brief, Exhibit 5). *See also* Appendix to Opening Brief, Exhibit 6.

- In late January 2003, the DMV tried to find volunteers to take this assignment. See the email from DMV supervisor Stapleton dated March 19, 2003, in which he recounts that on or about January 23, 2003, Art Ericson asked him to ask for such volunteers. He verbally

7

        asked five different technicians, including Rogers, but all declined; Appendix to Opening Brief, Exhibit 7.

- DMV Director Shahan issued a transfer memorandum to Rogers dated February 10, 2003 that included other job-related reasons for assigning him to work at the New Castle facility; Appendix to Opening Brief, Exhibit 8.

- Emails from Michael McCann dated March 3, 2004, shortly after the hiring freeze was ended, shows that the DMV understood it could move Rogers back to the Dover facility, as McCann promised Rogers when the transfer was originally made. Rogers transferred back to Dover shortly thereafter; Appendix to Opening Brief, Exhibits 9 and 10.

There is no indication in Rogers' discovery responses to the State's Interrogatories and Requests for Production that he had any loss of salary or benefits as a result of this temporary transfer.

ARGUMENT

SUMMARY JUDGMENT SHOULD BE GRANTED TO THE STATE AND AGAINST PLAINTIFF, WHERE THE UNDISPUTED MATERIAL FACTS SHOW THAT THERE WAS NO RACE-BASED RETALIATION AGAINST PLAINTIFF WITH RESPECT TO A JOB-RELATED TRANSFER TO MEET OPERATIONAL NEEDS AND ACCOMMODATE PLAINTIFF'S MEDICAL LIMITATIONS.

I.   STANDARD OF REVIEW ON SUMMARY JUDGMENT.

Defendant State of Delaware moved for summary judgment pursuant to Fed. R. Civ. Proc. 56 (c). This Court recently described the standard of review for these motions in *Boyd v. Wilmington Police Department*, 439 F. Supp. 2d 343, 344 (D.Del. 2006):

> Summary Judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The facts of this case are essentially undisputed in all material respects. Plaintiff fails to produce or point to any evidence other than his belief that his temporary transfer to a New Castle County DMV facility must have been related

9

to his exercise of his civil rights. Instead, the facts show that the Defendant was attempting to accommodate Plaintiff's physical limitations and meet its own operational needs, *without regard to* Plaintiff's then-ongoing Title VII litigation. Under these facts and the applicable law, therefore, summary judgment should be granted to the State and against Plaintiff.

## II.    MERITS OF THE ARGUMENT.

Title VII of the Civil Rights Act of 1964, as amended, provides for protection against retaliation against employees under appropriate circumstances:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

The U.S. Third Circuit Court of Appeals recently discussed the elements of a retaliation claim in *Moore v. City of Philadelphia*, --- F.3d ---, 2006 WL 2492256, at 10 (C.A. 3):

> To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).

There is no dispute that Plaintiff meets the first requirement of this analytical framework. As this Court is well aware, and as noted in the Statement of Facts, he filed a Title VII lawsuit against the DMV relating to how the agency dealt with his need for medical accommodation as a result of his non-work-

related knee surgery. This Court handled that case, up to and through its June 2004 settlement.

While that case moved toward resolution, however, the DMV needed to address its own management issues, as well as accommodate Plaintiff's medical limitations. After asking for other volunteers and finding none, in keeping with its past practices the DMV decided to transfer the Plaintiff, the least-senior staffer at the Dover Drivers' License Section, to one of its New Castle County facilities.

Thousands of State employees would see this transfer as routine, along with the longer commute that such transfers may require. This Court can take judicial notice that many state employees, as well as those employed by many others, routinely commute from Dover to Wilmington, from Wilmington to Dover, and on many commuter routes of similar length. In fact, the state provides van pools[3] and other options[4] for state employees to help offset the costs of commuting. As reflected in its discovery responses, the DMV readily admitted that it occasionally transfers its employees among its facilities, to meet customer needs and service backlogs.

Plaintiff did not suffer any loss of pay or benefits as a result of this temporary transfer. Nonetheless, he claims that the transfer was in retaliation for his filing of the prior litigation, which he settled with this same defendant months *after* he returned to Dover from the temporary transfer.

---

[3] http://www.state.de.us/dss/fleet/documents/fleetlink/FLExplainProg.pdf, as appeared on September 26, 2006.

[4] http://ben.omb.delaware.gov/commuter/index.shtml, as appeared on September 26, 2006.

11

The DMV could therefore reasonably suggest that Plaintiff failed to prove that the agency took any adverse action against him, within the meaning of Title VII's anti-retaliation provisions and the second step in the *prima facie* case.

For the purposes of this Motion, however, and in light of the Supreme Court's recent decision in *Burlington N. & Santa Fe Ry. Co. v. White*, --- U.S. ---, 126 S.Ct. 2405 (2006), the DMV assumes that this temporary transfer could be considered sufficiently adverse to meet that second step in the *prima facie* case analysis. *Nelson v. Upsala Coll.*, *supra*.

In *Moore*, *supra* at 10, the Third Circuit discussed the effect of the recent *Burlington Northern* decision:

> [T]he Supreme Court ... found that the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, and accordingly, "that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. at 2412-13. Because the discrimination and retaliation provisions "are not coterminous," the Court concluded that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id*. at 2414. Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415.

The next step is to find an contributory relationship between the allegedly adverse employment action and Plaintiff's previous exercise of his Title VII rights, as noted in *Moore*, *supra* at 10-11:

> To establish the third element of the *prima facie* case, as clarified in *Burlington Northern*, a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. "Many may suffer ... harassment at work, but if the reason for that

12

harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir.2006). This third element "identif[ies] what harassment, if any, a reasonable jury could link to a retaliatory animus." *Id*. at 449-50. "The ultimate question in any retaliation case is an intent to retaliate *vel non*." *Id*. at 449 n. 2.

This Plaintiff cannot meet this requirement.

Unlike the shocking allegations of misconduct by the Philadelphia Police Department supervisors discussed in the *Moore* case, for example, here there is no evidence of any similar animus against Plaintiff by any DMV officials—especially with respect to the transfer that is the heart of the current litigation. The only actual connection between the transfer and Plaintiff's prior Title VII lawsuit is that both were related to his non-work-related knee injury. He needed to be accommodated, and DMV needed a staffer who could work at the New Castle facility, instead of the Dover lanes. Plaintiff could physically handle the work, and when no one senior to Plaintiff volunteered to transfer, DMV transferred Plaintiff. That's all there is to this case, and the evidence fails to show that DMV considered either Plaintiff's race or Plaintiff's ongoing litigation.[5] Therefore, since Plaintiff cannot show any material facts tending to prove the third element of his *prima facie* case, the lawsuit fails and should be dismissed.

---

[5] Email and other documentary evidence shows that DMV was keenly aware of Plaintiff's inclination to claim he was being discriminated against due to his race. *See, e.g.*, Appendix to Opening Brief, Exhibit 11, where DMV staff note that Rogers filed a charge of retaliation. DMV officials were therefore careful to make sure they could support their employment decisions regarding Plaintiff with business-related facts. *See, e.g.*, McCann's memos to File dated January 30, 2003; Appendix to Opening Brief, Exhibit 12 and February 10, 2003; Appendix to Opening Brief, Exhibit 13, McCann's undated email discussing McCann's telephone conversation with Plaintiff discussing the transfer; Appendix to Opening Brief, Exhibit 14, and the prior emails discussed in the Statement of Facts, *infra,* copies of which are in the accompanying Appendix; *see also* emails reproduced in Appendix to Opening Brief, Exhibits 15 and 16 discussing the transfer issue. Documenting employee management decisions with business-related evidence does not translate to proof of a discriminatory animus, however.

To some extent, that third step in the analysis blends with the next phase of these cases, wherein the Court reviews the explanation given by the employer for the employment decision of which the Plaintiff complains. Here is how the *Moore* Court described it:

> If the employee establishes this *prima facie* case of retaliation, the familiar *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] approach applies in which "the burden shifts to the employer to advance a legitimate, non-retaliatory reason" for its conduct and, if it does so, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir.1997). To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).

The DMV had more than ample reason to make this transfer. It is well within the government's discretion to transfer its employees among its facilities, to spread out the workload and ease unbalanced geographic burdens on the taxpayers and others who come to its offices for assistance. The DMV followed a routine practice of first seeking volunteers for this purpose, well before it assigned Plaintiff to a new and temporary job location. It is not the DMV's fault that Plaintiff's fellow employees refused to volunteer.

There is no evidence showing any conspiracy or other concerted effort to retaliate against Plaintiff for having filed his original lawsuit. There are no material facts in dispute challenging the DMV's evidence explaining its actions supporting this transfer. The evidence of record fails to show that the reasons given for the transfer were a mere pretext for a discriminatory, retaliatory motive by any DMV manager. Therefore, summary judgment should be granted for the State, and against the Plaintiff.

14

**CONCLUSION**

The Plaintiff filed a prior Title VII lawsuit against the DMV which was settled in 2004. Long before that settlement was executed by the parties, however, the DMV made a management decision to transfer the Plaintiff to a location where he could perform his duties commensurate with his physical limitations, and where the DMV needed someone with his job skills to meet the demands of the traveling public. When a statewide hiring freeze thawed, and the DMV could add new employees to its staff, it transferred Plaintiff back to Dover as promised, where he could work closer to home as he desired. Without any further evidentiary connection between those facts other than their contemporaneous existence, Plaintiff filed this new lawsuit, alleging retaliation.

As shown in the *Moore* case, *supra*, proof of something far more than a coincidence is necessary to survive a motion for summary judgment. In this case, however, there are no material facts in dispute tending to show that Plaintiff was being retaliated against, or showing that the reasons cited by the DMV to support the transfer decision were a pretext for a retaliatory motive.

For the reasons outlined and discussed in this Brief, therefore, the State submits that summary judgment should be granted in its favor, and that Plaintiff's Complaint should be dismissed with prejudice.

                                      Respectfully submitted,

                                      State of Delaware
                                      Department of Justice

                                      */s/ Frederick H. Schranck*
                                      Frederick H. Schranck (ID #925)
                                      Deputy Attorney General
                                      P.O. Box 778
                                      Dover, DE  19903
                                      (302) 760-2020
                                      Attorney for State Defendants

DATE:       September 27, 2006