Westlaw.

--- F.3d ----                                                                                                         Page 1

--- F.3d ----, 2006 WL 2492256 (C.A.3 (Pa.)), 98 Fair Empl.Prac.Cas. (BNA) 1378
**(Cite as: --- F.3d ----)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States Court of Appeals,Third Circuit.
*Myrna MOORE; Sheila Young; Raymond Carnation; William Mckenna; Richard Safford
v.
CITY OF PHILADELPHIA; John Moroney, Sgt.; Frank Bachmeyer, Lt.; William Colarulo, Capt.; Cullen, Lt.; Wilson, Lt.; Frank Hogan, Lt.; David Hogan, Lt.; Frank Mach, Sgt.; John Hewitt, Sgt.; Joseph Jackson, Sgt.
Raymond Carnation; William McKenna, Appellants in No. 03-1465.
*(Amended per Clerk's 4/14/03 Order).
Michael McKenna, Appellant in No. 03-1473
v.
City of Philadelphia; Hogan, Lt.; Cullen, Lt.; Wilson, Lt.; Moroney, Sgt.; Frank Bachmeyer, Lt.; William Colarulo, Capt.; Joseph O'Connor, Inspector; Frank Mack; Joseph Jackson; John Hewitt.
**Nos. 03-1465, 03-1473.**

Argued April 24, 2006.
Aug. 30, 2006.
As Amended Sept. 13, 2006.

**Background:** Caucasian former police officers brought suit under Title VII alleging that their supervisors violated their right to be free from retaliation for opposing racial discrimination in the workplace. The United States District Court For the Eastern District of Pennsylvania, Mary A. McLaughlin, granted defendants' motion for summary judgment, 2003 WL 171373, and appeal was taken.

**Holdings:** The Court of Appeals, Stapleton, Circuit Judge, held that:

(1) genuine issues of material fact existed as to whether supervisors retaliated against white police officers for their opposition to discriminatory comments made by supervisor regarding African-American officers, precluding summary judgment for supervisor in officers' Title VII retaliation claim;

(2) officers failed to establish that co-worker harassment, including being called "rats" and "snitches" after reporting alleged abuses by the co-workers to supervisor was linked to a retaliatory animus on the part of the supervisor, as required under Title VII to establish a prima facie case for retaliatory harassment against supervisor; and

(3) officers' conduct of reporting the existence of racial problems in the department in their early conversations with supervisors was equivocal, and therefore insufficient to support a finding that they were opposing unlawful discrimination.

Reversed and remanded.

**[1] Civil Rights 78 🗝1243**

78 Civil Rights
　78II Employment Practices
　　78k1241 Retaliation for Exercise of Rights
　　　78k1243 k. Practices Prohibited or Required in General; Elements. Most Cited Cases
To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**[2] Civil Rights 78 🗝1244**

78 Civil Rights
　78II Employment Practices

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                       Page 2

--- F.3d ----, 2006 WL 2492256 (C.A.3 (Pa.)), 98 Fair Empl.Prac.Cas. (BNA) 1378
(Cite as: --- F.3d ----)

      78k1241 Retaliation for Exercise of Rights
         78k1244 k. Activities Protected. Most Cited Cases
With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings and those who oppose discrimination made unlawful by Title VII. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[3] Civil Rights 78 €—1244

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
         78k1244 k. Activities Protected. Most Cited Cases
For purposes of a Title VII retaliation claim, whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[4] Civil Rights 78 €—1245

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
         78k1245 k. Adverse Actions in General. Most Cited Cases
A plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[5] Civil Rights 78 €—1252

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
         78k1252 k. Causal Connection; Temporal Proximity. Most Cited Cases
To establish the third element of a prima facie case of retaliation under Title VII, a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[6] Civil Rights 78 €—1244

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
         78k1244 k. Activities Protected. Most Cited Cases
While white workers may be unable to successfully complain under the antidiscrimination provision of Title VII solely because they are required to work in an environment hostile to blacks, if they became the victims of materially adverse actions because they reasonably perceived that environment as violative of Title VII and objected, they have a valid retaliation claim. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[7] Federal Civil Procedure 170A €—2497.1

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
            170Ak2497 Employees and Employment Discrimination, Actions Involving
               170Ak2497.1 k. In General. Most Cited Cases
Genuine issues of material fact existed as to whether supervisors retaliated against white police officers for their opposition to discriminatory comments made by supervisor regarding African-American officers, precluding summary judgment for supervisor in officers' Title VII retaliation claim. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[8] Civil Rights 78 €—1245

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                    Page 3

--- F.3d ----, 2006 WL 2492256 (C.A.3 (Pa.)), 98 Fair Empl.Prac.Cas. (BNA) 1378
(Cite as: --- F.3d ----)

78k1245 k. Adverse Actions in General. Most Cited Cases
For purposes of a Title VII retaliation claim, evaluating whether actions are materially adverse, the court must remain mindful that it is important to separate significant from trivial harms because an employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[9] Civil Rights 78 ⚷1250

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
         78k1250 k. Harassment; Work Environment. Most Cited Cases

Civil Rights 78 ⚷1528

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1526 Persons Liable
         78k1528 k. Vicarious Liability; Respondeat Superior. Most Cited Cases
An employer may be liable under Title VII for retaliatory harassment perpetrated by an employee's co-workers only if the prima facie case is satisfied and if there is a basis for employer liability for the coworker's conduct. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[10] Civil Rights 78 ⚷1250

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
         78k1250 k. Harassment; Work Environment. Most Cited Cases

Civil Rights 78 ⚷1528

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes

78k1526 Persons Liable
      78k1528 k. Vicarious Liability; Respondeat Superior. Most Cited Cases
For purposes of an employer's liability under Title VII, when co-workers are the perpetrators of the harassment, the plaintiff must prove employer liability using traditional agency principles; there is such a basis for liability where supervisors knew or should have known about the co-worker harassment, but failed to take prompt and adequate remedial action to stop the abuse. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[11] Civil Rights 78 ⚷1252

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
         78k1252 k. Causal Connection; Temporal Proximity. Most Cited Cases

Municipal Corporations 268 ⚷185(1)

268 Municipal Corporations
   268V Officers, Agents, and Employees
      268V(B) Municipal Departments and Officers Thereof
         268k179 Police
            268k185 Suspension and Removal of Policemen
               268k185(1) k. Grounds for Removal or Suspension. Most Cited Cases
Police officers failed to establish that co-worker harassment, including being called "rats" and "snitches" after reporting alleged abuses by the co-workers to supervisor, was linked to a retaliatory animus on the part of the supervisor, as required under Title VII to establish a prima facie case for retaliatory harassment against supervisor; to the contrary, the officers were harassed by co-workers because of their perceived allegiance to a racist manager, not their opposition to him. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

Police officers failed to establish that co-worker harassment, including being called "rats" and "snitches" after reporting alleged abuses by the co-workers to supervisor, was linked to a retaliatory animus on the part of the supervisor, as required

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  Page 4
--- F.3d ----, 2006 WL 2492256 (C.A.3 (Pa.)), 98 Fair Empl.Prac.Cas. (BNA) 1378
(Cite as: --- F.3d ----)

under Title VII to establish a prima facie case for retaliatory harassment against supervisor; to the contrary, the officers were harassed by co-workers because of their perceived allegiance to a racist manager, not their opposition to him. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**[12] Civil Rights 78 ⚖1244**

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1244 k. Activities Protected. Most Cited Cases

**Municipal Corporations 268 ⚖185(1)**

268 Municipal Corporations
    268V Officers, Agents, and Employees
        268V(B) Municipal Departments and Officers Thereof
            268k179 Police
                268k185 Suspension and Removal of Policemen
                    268k185(1) k. Grounds for Removal or Suspension. Most Cited Cases

Police officers' conduct of reporting the existence of racial problems in the department in their early conversations with supervisors was equivocal, and therefore insufficient to support a finding that they were opposing unlawful discrimination, as required for Title VII retaliation claim; officers needed to stand in opposition to discrimination, not just objectively report its existence or attempt to serve as an intermediary. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

Police officers' conduct of reporting the existence of racial problems in the department in their early conversations with supervisors was equivocal, and therefore insufficient to support a finding that they were opposing unlawful discrimination, as required for Title VII retaliation claim; officers needed to stand in opposition to discrimination, not just objectively report its existence or attempt to serve as an intermediary. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

Elliott Schulder, Gregory M. Lipper (Argued), Covington & Burling, Washington, DC, for Appellants.
Romulo L. Diaz, City Solicitor, Elise M. Bruhl, Deputy City Solicitor, Appeals (Argued), City of Philadelphia Law Department, Philadelphia, PA, for Appellees.

Before FUENTES, STAPLETON and ALARCON, [FN*] Circuit Judges.

*OPINION OF THE COURT*
STAPLETON, Circuit Judge.
*1 Michael McKenna, William McKenna, and Raymond Carnation are all former police officers who worked in the 7-squad of the 25th District of the Philadelphia Police Department. All three officers are white. They claim that their supervisors violated their right under Title VII to be free from retaliation for opposing racial discrimination in the workplace. The District Court granted summary judgment in favor of their employer. Accordingly, in the course of our review, we will view the record in the light most favorable to the plaintiffs. We will reverse as we find that these three police officers have raised triable issues as to whether they suffered unlawful retaliation.

I.

A. Background

In August 1997, Captain William Colarulo took the helm of the 25th District of the Philadelphia Police Department and assumed command of the 7-squad within that district. At that time, Michael McKenna (hereinafter "Michael") was a beat officer in the 7-squad. In August of 1997, Michael's brother, William McKenna (hereinafter "William") and Raymond Carnation (hereinafter "Carnation") were transferred to the 7-squad from another squad within the 25th District.

When Colarulo assumed control, the 25th District-"the Badlands"-was known for having one of the highest violent crime rates in Philadelphia. To respond to the crime rates in the area, Colarulo set

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                 Page 5

--- F.3d ----, 2006 WL 2492256 (C.A.3 (Pa.)), 98 Fair Empl.Prac.Cas. (BNA) 1378
**(Cite as: --- F.3d ----)**

up barricades in certain neighborhoods that required a constant presence of beat officers in the 7-squad. The 7-squad did not have a regular sergeant supervisor at that time. [FN1] Various beat officers took advantage of this lack of supervision by not patrolling their beat properly and failing to man those barricades.

William and Carnation were partners on their beat. From the moment they arrived at the 7-squad in August 1997, the two complained of various forms of harassment by fellow officers-e.g. not getting courtesy rides from other officers, not having access to radios on their shift, other officers interfering with their radio communication ... etc. Also, William and Carnation interacted with several African-American officers on the 7-squad, answering work-related questions and socializing with them in the office. Apparently, this was not the norm in the 7-squad. One of these African-American officers told William that the other white officers in the 7-squad did not speak with her. William and Carnation also heard complaints about tense race relations at the squad from other black officers.

### B. Moroney's Conduct

In October of 1997, Sergeant John Moroney became the permanent supervisor of the 7-squad. Throughout the fall and winter of 1997, these plaintiffs witnessed numerous incidents that indicated that Moroney would exacerbate the racial discord in the 7-squad.

Michael reported several instances where Moroney made racially derogatory comments about black officers in front of him, each time eliciting an objection from Michael. The District Court summarized:
*2 Sometime in October of 1997, [Michael] heard Moroney say "I'm going to get that nigger Safford." [Michael] said, "Please do not use any words like that in my presence. I don't want people to think you are talking to me about something like that." ...
[Michael], while on duty, approached Myrna Moore, an African-American officer [in the 7-squad] who was ... standing outside by herself in the rain. She told [Michael] that she had been told to stand at that location. [Michael] told her that she was supposed to be ... [working with him to patrol] the area in the car, not on foot.... [When Sergeant Moroney saw Moore in Michael's car, Moroney asked Michael, not in Moore's presence]: "What's the nigger doing in the car?" [Michael] responded, " Sarge, I told you once before about this. Don't use that in front of me again." Sergeant Moroney told [Michael] that Officer Moore was being punished. [Michael] said "Being punished? Since when does the Police Department punish people by keeping them out in a dangerous area by themselves? She could get killed like that. That's somebody's mom, and not just that, it's somebody's daughter." To which Sergeant Moroney replied, "Well if you don't like it ... you want to see how it's like to work with a nigger." Moroney then instructed [Michael] to drive the police vehicle back and drop it off ... [and then Moroney] drove him back to the location where Officer Moore was standing and Moroney told the plaintiff to stand there with Moore and not to move from that location....
At a different time in the fall or winter of 1997, Sergeant Moroney made the comment that "[a female officer] better watch herself, because these niggers around here will kill her." [Michael] told Sergeant Moroney not to use those words....
Also during the fall or winter of 1997, Sergeant Moroney stated, in [Michael's] presence, "why are they hiring these niggers?" ... [Michael] responded, "Sarge, you know how I am when you talk like that. I'm asking you to stop."

App. at 17-19.

William and Carnation also witnessed incidents that revealed Moroney's attitudes regarding the African-American officers he supervised. Moroney was one of the supervisors in the squad from which William and Carnation had transferred in August 1997. Within a week or two of Moroney taking over the 7-squad in October 1997, William and Carnation relayed numerous grievances regarding their workplace and fellow officers to Moroney. During those initial conversations, they told him about "racial problems" within the 7-squad. After those initial conversations, they heard various complaints from African-American officers about

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.