IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENDALL RAYE ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-721-SLR |
| | ) |
| STATE OF DELAWARE, DEPT. OF PUBLIC SAFETY/DMV, | ) |
| | ) |
| Defendant. | ) |

Kendall Raye Rogers, Dover, Delaware, pro se Plaintiff.

Frederick H. Schranck, Deputy Attorney General, Delaware Department of Justice, Dover, Delaware. Attorney for Defendant.

**MEMORANDUM OPINION**

Dated: March 31, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On October 7, 2005, pro se plaintiff Kendall Raye Rogers ("plaintiff") filed the present complaint against defendant State of Delaware, Department of Public Safety, Division of Motor Vehicles ("defendant") alleging retaliation in violation of Title VII of the Civil Rights Act of 1964. (D.I. 1) Presently before the court is defendant's motion for summary judgment. (D.I. 28) For the reasons set forth below, the court grants defendant's motion.

## II. PROCEDURAL AND FACTUAL BACKGROUND

In April 1997, defendant hired plaintiff as a motor vehicle technician at its Division of Motor Vehicles inspection facility at Dover, Delaware.[1] (D.I. 1, ex. A) In January 2002, plaintiff underwent a non-work related knee surgery that resulted in indefinite physical restrictions that prevented him from working as a motor vehicle technician. (Id.) Due to plaintiff's knee surgery, defendant temporarily reassigned him from the motor vehicle inspection lanes to the driver's license section in Dover, Delaware. (D.I. 25 at ¶ 1) In August 2002, plaintiff submitted to defendant a physician's note stating that, because of his knee surgery, he could no longer perform the functions of a motor vehicle technician for an indefinite period of time. (Id.; D.I. 1, ex. A)

On March 5, 2002, plaintiff filed a racial discrimination charge ("first charge") with

---

[1] Attached to plaintiff's complaint is a U.S. Equal Employment Opportunity Commission ("EEOC") letter of determination, dated July 30, 2004. This letter is the primary basis of his retaliation case and is referred to as (D.I. 1, ex. A) hereafter.

the EEOC relating to circumstances involving his knee surgery. (D.I. 1, ex. A) The EEOC investigated the charge and issued a "no cause" finding in favor of defendant on January 15, 2003. (Id.) On February 18, 2003, defendant involuntarily transferred plaintiff to its New Castle, Delaware motor vehicle inspection facility where he also worked in the driver's license section. (Id.) The New Castle facility is fifty miles from his former work location in Dover. (Id.) On December 12, 2003, plaintiff filed a second EEOC charge ("second charge") claiming that defendant transferred him in retaliation for his first charge. (Id.; D.I. 2) On May 16, 2003, plaintiff exercised his right to file a civil suit ("first cause of action") in federal court based on his first charge. See Rogers v. State of Delaware, Dept. of Public Safety, Div. of Motor Vehicles, No. Civ. A. 03-476, 2004 WL 1136546, at *1 (D. Del. May 19, 2004).

On June 4, 2004, plaintiff's first cause of action in federal court reached settlement. (D.I. 1, ex. A) Per the terms of the settlement agreement, plaintiff would continue to work in the driver's license section at an unspecified facility rather than in the motor vehicle inspection lanes. (D.I. 31, ex. 1) In addition, the settlement agreement provided that plaintiff would receive credit for seven and one-half sick days. (Id.) The settlement agreement also contained a provision stating that defendant would not retaliate against plaintiff for filing the first charge and complaint. (Id.)

The EEOC issued to plaintiff a right to sue letter for his second charge on July 19, 2005 and he filed the instant civil complaint for retaliation on October 7, 2005. (Id.) Plaintiff claims defendant transferred him in retaliation for his first charge for the following reasons: (1) he is the only African American motor vehicle technician in the department (D.I. 39); (2) three white managers notified him of his transfer to New

2

Castle (id.); (3) the decision to transfer was made around January 23, 2003, eight days after the EEOC "no cause" finding, and after five Dover employees, including plaintiff, declined to voluntarily transfer to New Castle (D.I. 25 at ¶ 6); (4) defendant could have transferred one of two other white employees, specifically, "one with more experience and one with less seniority" (D.I. 1, ex. A); and (5) the temporal proximity between his EEOC charge, proceedings and date of his transfer (id.).

Defendant denies that it transferred plaintiff for retaliatory reasons, stating that: (1) plaintiff's reassignment to the driver's license section in Dover was solely a temporary accommodation for his knee surgery (D.I. 25 at ¶ 1); (2) a statewide hiring freeze, from September 18, 2002 to December 16, 2003, combined with a staff shortage in New Castle necessitated plaintiff's transfer to meet operational needs (id.; D.I. 31, ex. 3); (3) under the State of Delaware merit rules, seniority is not controlling in a transfer decision (D.I. 25 at ¶ 3); and (4) in March 2004, plaintiff was transferred back to Dover once a position became available (id. at ¶ 11).[2]

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[2]There is some dispute as to whether plaintiff's transfer to Dover was permanent or temporary. Defendant's letter to plaintiff stated that his transfer to New Castle was permanent; however, plaintiff was transferred back to Dover in March of 2004, three months after the hiring freeze had ended. (D.I. 25 at ¶ 4; D.I. 31, ex. 8) Defendant explains this discrepancy by asserting that plaintiff's transfer was only permanent for the duration of the hiring freeze and that it had communicated this information to plaintiff in a conversation prior to plaintiff's transfer. (D.I. 25 at ¶ 4)

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." Revis v.

4

Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

## IV. DISCUSSION

When a plaintiff does not present direct evidence of discriminatory animus, courts analyze a plaintiff's claims pursuant to a pretext theory of discrimination. In Title VII employment discrimination actions invoking the pretext theory of discrimination, courts apply the McDonnell Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Pursuant to McDonnell Douglas, a plaintiff has the initial burden to establish a prima facie case of discrimination. Id. at 802. If plaintiff succeeds in establishing his prima facie case, the burden shifts to defendant employer to proffer "legitimate non-discriminatory" reason for its actions. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997). If defendant meets this burden, the burden again shifts to plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. Id. at 804. To do this, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). If a defendant carries this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendant's proffered reasons to permit a reasonable fact finder to conclude that the reasons are fabricated. See Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show evidence that: "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action."[3] Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). Defendant concedes that plaintiff meets the first prima facie element because filing a complaint of discrimination is protected under Title VII. (D.I. 29 at 10) Defendant, for purposes of this motion, also concedes that plaintiff's transfer to New Castle constitutes an adverse employment action. (Id. at 12)

To establish the third prima facie element of a retaliation case, plaintiff must show a causal connection between his first charge and his transfer to New Castle. See Moore, 461 F.3d at 341-42. Causation, in a retaliation case, may be demonstrated through: (1) antagonism or retaliatory animus toward plaintiff; (2) the temporal proximity between the protected activity and adverse employment action; or (3) evidence of retaliatory animus in the intervening period between the protected activity and allegedly retaliatory conduct when temporal proximity is lacking. See Farrell, 206 F.3d at 279-81. In addition, courts may consider whether the record as a whole demonstrates an inference of retaliation. See id. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment

---

[3]Under a liberal interpretation, plaintiff's pro se complaint and summary judgment papers may allege a separate cause of action for racial discrimination. (See D.I. 1, 39) Nevertheless, plaintiff has failed to present any evidence indicative of racial animus, thus, failing to meet his burden in this regard.

6

action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)). In the instant case, the court finds that the ten month proximity between the first charge and the transfer, without more, is not sufficient to establish plaintiff's prima facie case.[4]

Notwithstanding, defendant transferred plaintiff to New Castle one month after the EEOC issued its "no cause" finding on January 15, 2003. In addition, the court in reviewing the record as a whole finds that the content of defendant's e-mail correspondence, sent eight days after the "no cause" finding, is sufficient to create a retaliatory inference. (D.I. 31, ex. 4) In particular, defendant's e-mails imply that it did not have an operational justification for transferring plaintiff. For example,

> we have to give him a letter stating that he is going and why. Mike S. has suggested that the letter contain [an] operational justification. . . . Mike suggested that we could look at the transactions per employee at Dover versus New Castle and maybe the driving backlog. What I need from you is some hard evidence to put in this letter. Anything you can think of would be appreciated.

(D.I. 31, ex. 4) (email dated January, 29, 2003)  Defendant's responsive email included:

> The main argument I would make is New Castle has one full[-]time vacancy[,] another full[-]time employee at Wilmington due to a disability and another full[-]time employee out indefinitely for a major operation. . . . I can get you some more data if you need it but I believe that should be sufficient.

---

[4]Notably, plaintiff filed his first cause of action and signed the settlement agreement after he was transferred to New Castle.

7

(Id.) Based on the above, plaintiff has established his prima facie case because the decision to transfer plaintiff was made eight days after the EEOC's "no cause" finding and defendant's emails create an inference of retaliatory motive.

Defendant's articulated non-discriminatory reasons for its decision to transfer plaintiff are that his reassignment to the driver's license section in Dover was temporary and his transfer to the New Castle driver's license section was a permissible employment decision based on operational and staffing needs. (D.I. 29 at 14) Specifically, a state wide hiring freeze was in effect between September 18, 2002 and December 16, 2003, preventing defendant from creating another permanent position for plaintiff in the Dover driver's licence section. (Id. at ¶ 2; D.I. 31, ex. 3) At the same time, the New Castle driver's license section was short three employees and plaintiff was extra staff at Dover.[5] (D.I. 25 at ¶ 2; D.I. 31, ex. 8) In addition, defendant asserts that seniority does not control transfer decisions under the State of Delaware merit rules and "employees may be transferred to another position for which they meet minimum qualifications in the same pay grade within the same agency." (D.I. 25 at ¶ 3)

As a pro se plaintiff, the court interprets his summary judgment papers to contain the following arguments against defendant's proffered reasons. Plaintiff "contends that there were at least two whites, one with more experience and one with less seniority who could have been transferred." (D.I. 1, ex. A) The merit rules, however, provide that defendant may effectuate transfers to "promote the efficiency of [ ] service." (D.I.

---

[5]The New Castle driver's license section had "one full-time vacancy, one employee assigned to Wilmington, and another employee out of work indefinitely on leave of absence." (D.I. 31, ex. 8)

8

31, ex. 2) The merit rules also state that seniority does not control transfers and an employee must only meet the minimum qualifications in a transfer decision. (Id.) A reasonable jury could not credit plaintiff's allegation because he has failed to offer any evidence to discredit defendant's proffered reasons in this regard.

As discussed supra, plaintiff also relies on temporal proximity and defendant's emails to support causation. Although plaintiff's argument satisfies his prima facie burden to show causation because it draws an inference of retaliation, it does not demonstrate sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's proffered non-discriminatory reasons. See Fuentes v. Perskie, 32 F.3d at 765. Defendant's evidence is consistent with its proffered operational justification for the transfer. The emails demonstrate that the New Castle facility was short staffed and the merit rules provide for a qualified employee's transfer.[6] (Id.) Moreover, the record supports that defendant assigned plaintiff to the driver's license section in Dover as surplus staff and that a hiring freeze prevented it from creating a permanent position for plaintiff at that location. Plaintiff does not cast sufficient doubt, through additional evidence or otherwise, on defendant's proffered reason such that a reasonable jury could find for plaintiff and, as such, summary judgment for defendant is proper.

## V. CONCLUSION

For the above reasons, the court grants defendant's motion for summary

---

[6]"The ultimate question in any retaliation case is an intent to retaliate." Moore, 461 F.3d at 342. Documenting employee decisions with business related evidence does not necessarily translate to proof of discriminatory animus.

judgment. (D.I. 28) An appropriate order shall issue.